UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAURA NEUMANN,<br><br>      Plaintiff,<br> v.<br><br>RED ROCK 4-WHEELERS, INC., a Utah Corporation; DOES 1 through 100; and ROES 1 through 100, inclusive,<br><br>      Defendant. | Case No. 2:19-cv-02160-ART-EJY<br><br>ORDER |

  The Court grants in part and denies in part Defendant Red Rock 4-Wheelers, Inc.'s ("Red Rock") Motion to Dismiss Pursuant to FRCP 12(b)(2) and (3) for lack of personal jurisdiction and improper venue (ECF No. 38). The Court finds that it lacks personal jurisdiction over Red Rock and, in lieu of dismissal, transfers this action to the District of Utah.

  **A.**  **History of the Case**

  Plaintiff Laura Neumann ("Neumann") is a Nevada resident suing Red Rock, a Utah company, for injuries she sustained during the Easter Jeep Safari, an event held by Red Rock in Utah, on April 14, 2019. Neumann was seriously injured when an individual lost control of his Jeep.

  Neumann filed a complaint in a Nevada state court, claiming negligence and gross negligence. (Exh. 2-A.)[1] Red Rock removed the action to federal court, asserting diversity jurisdiction on the grounds that the parties are citizens of

---

[1] The exhibit referenced accompanies Red Rock's Notice of Removal. (ECF No. 1.)

different states (Nevada and Utah) and the amount in controversy exceeds $75,000. (ECF No. 1.) Neumann agreed that removal was proper. (ECF No. 5.)

After Red Rock moved to dismiss Neumann's complaint for lack of personal jurisdiction, (ECF Nos. 8 and 9), this Court directed the parties to conduct limited jurisdictional discovery. (ECF No. 32.)

With the benefit of jurisdictional discovery, the record contains the following facts about Red Rock and its Nevada contacts. Red Rock is a Utah corporation, with its principal place of business in Utah, and has three part-time employees, who reside in Utah. (ECF No. 40 at 13.) Red Rock's storage facilities and clubhouse are in Utah. (Exh. 1 at 12:3-6; 25:8-9.)[2] Red Rock has two classes of members: local voting members must reside in Grand and San Juan counties in Utah and associate members can reside anywhere. (*Id.* at 20:1-17.) From 2018-2020, there were a total of 1,605 members of Red Rock. Of that total, there were 37 members with a Nevada address, which equals 2.3% of the total membership. (ECF No. 38 at 4.)

Red Rock's business is primarily centered around two events for off-road vehicles in Moab, Utah, namely, the Easter Jeep Safari and Labor Day Campout. (ECF No. 38 at 3.) Red Rock hosts a "semi-club-sponsored" trail of the month event, which entails a weekend social activity at a trail. (Exh. 1 at 29:5-13.)[3] Red Rock holds meetings the first Monday of every month at its clubhouse in Utah. (*Id.* at 25:3-6.) Red Rock markets its Utah-based events to individuals who have joined its mailing list, either by becoming members, registering for an event, or signing up on its website to receive information. Red Rock's marketing includes mailing out an annual magazine and quarterly newsletter, sending email blasts, and hosting a website. Red Rock disseminates its annual magazine to the "active"

---

[2] The exhibit referenced accompanies Neumann's response to Red Rock's motion to dismiss. (ECF No. 39.)

[3] The exhibit referenced accompanies Neumann's response to Red Rock's motion to dismiss. (ECF No. 39.)

individuals on its mailing list, which includes members and non-members who have signed up to receive information about Red Rock through its website or have participated in Red Rock's events. (*Id.* at 21:19-22:3.) If someone has had no contact with Red Rock for four years, they remain on the Red Rock mailing list but are considered "inactive" and do not receive Red Rock's annual magazine. (*Id.* at 22:14-21.) Red Rock sends a quarterly newsletter just to members. (*Id.* at 27:24-28:4.) Red Rock maintains a largely informational website with some interactive features. Through its website, Red Rock provides information, sells merchandise, (*id.* at 14:24-15:4)[4], sends blast emails to its email list to market events, (*id.* at 35:7-10), encourages interested individuals to become members and attend Red Rock events, (*id.* at 49:55-20), and encourages members to renew their membership, (*id.* at 35:9-10).

Red Rock's contacts with Nevada are limited. It has no offices in Nevada. It has no Nevada business licenses. It has no employees in Nevada. It does not advertise in Nevada. It has never organized or promoted an event in Nevada. No Red Rock representative has ever attended a Nevada trade show to promote Red Rock or its events. For the years 2018-2020, the Red Rock mailing list included, on average, just over 10,000 addresses with only 3% of the addresses located in the State of Nevada. (Exh. C at ¶¶ 12-14)[5] Between 2018 and 2020, 32,288 annual magazines were mailed; Of that total, 978 magazines were sent to addresses in Nevada. (*Id.* at ¶¶ 12-14.) Between 2018 and 2020, a total of 3,653 quarterly newsletters were mailed out, with 93 mailed to Nevada addresses. (*Id.* at ¶¶ 15-17.) The record reflects that the number of attendees at the Easter Jeep Safari was 1,650 in 2018 and 1,683 in 2019. (*Id.* at ¶¶ 8-9.) Roughly 2.8% of those attendees had Nevada addresses, 46 or 47 attendees in 2018 and 47 or 48 attendees in 2019. (*Id.*); (ECF No. 39 at 4.) While the attendance records may

---

[4] The exhibit referenced accompanies Neumann's response to Red Rock's motion to dismiss. (ECF No. 39.)
[5] The exhibit referenced accompanies Red Rock's motion to dismiss. (ECF No. 38.)

3

contain discrepancies, neither party has provided revised numbers for the total attendees or those from Nevada.

There is no evidence in the record suggesting that Neumann was ever a member of Red Rock or that she received any marketing materials from Red Rock. Neumann attended the Easter Jeep Safari in Moab, Utah, because her now-husband, Rick Weight, had learned about the Easter Jeep Safari from a customer on an unspecified date. (Exh. E. at 33:20-24.)[6] Weight signed up to be an associate member of Red Rock in October 2018, about six months before the Easter Jeep Safari. Weight registered for the Easter Jeep Safari on Red Rock's website on an unspecified date. (*Id.* at 27:2-38:11.) Neumann accompanied Weight to Moab, Utah to attend the Easter Jeep Safari in April 2019, where the incident at issue occurred. The record does not indicate whether Weight signed up to be an associate member in connection with registering for the Easter Jeep Safari. The record is unrefuted, however, regarding the chain of events that led Weight to attend the Easter Jeep Safari. He first learned about the 2019 Easter Jeep Safari from a customer named Mr. Manzini who had participated in the event previously, registered for the event on Red Rock's website, and later attended the event. (*Id.* at 33:20-34:15.) Red Rock did not market to Weight before he signed up as an associate member in October 2018 and Weight did not attend the Easter Jeep Safari because of any of Red Rock's marketing efforts.

**B.  Analysis**

Red Rock moves to dismiss for lack of personal jurisdiction and improper venue, requesting dismissal or, in the alternative, for the Court to transfer venue to the District of Utah. While the Court finds that it lacks personal jurisdiction over Red Rock, in lieu of dismissal it exercises its discretion to transfer the case to the District of Utah, where it could have been brought.

---

[6] The exhibit referenced accompanies Red Rock's reply in support of its motion to dismiss. (ECF No. 40.)

4

### 1. Personal Jurisdiction

A federal court can adjudicate a matter only when it has personal jurisdiction over the parties. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). A forum state can exercise personal jurisdiction only if a defendant has sufficient contacts with the state. *LNS Enterprises, LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022). The plaintiff bears the burden of establishing that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a federal statute does not govern personal jurisdiction, district courts apply the law of the state in which the court sits. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09 (9th Cir. 2010). Since Nevada's long-arm statute, NRS § 14.065, reaches the limits of due process set by the United States Constitution, the Court analyzes whether exercising jurisdiction comports with federal due process. *See Baker v. Eighth Judicial Dist. Ct. ex rel. Cty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000).

There are two types of personal jurisdiction: general and specific. *LNS Enterprises, LLC*, 22 F.4th at 858-859. "Each depends on the quantity and quality of contacts that the defendant has with the state." *Id.* at 859. A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so continuous and systematic as to render them essentially at home in the forum State. *Id.* (citation and internal quotation marks omitted). Claims based on general jurisdiction do not need to relate to the forum State or to the defendant's activity there. *Id.* In contrast to general jurisdiction, specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit. *Id.*

    **a.**    **This Court lacks general jurisdiction over Red Rock.**

Though Neumann argues this Court has general jurisdiction over Red Rock, (ECF No. 39 at 10), this Court finds that Red Rock's contacts with Nevada

5

are not "so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014) (*citing Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 (2011)). A trial court may rule on the issue of personal jurisdiction by "relying on affidavits and discovery materials without holding an evidentiary hearing," though "dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Neumann has not made a prima facie showing of personal jurisdiction. Red Rock's contacts with Nevada fall well short of the requisite showing for general jurisdiction. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011)(finding no general jurisdiction when Defendant had no offices or staff in the forum state, was not registered to do business there, had no registered agent for service of process there, and paid no state taxes there). Like the Defendant in *Mavrix*, Red Rock has no offices or staff in Nevada, is not registered to do business in Nevada, and pays no state taxes. The Court does not have general jurisdiction over Red Rock.

### b. This Court lacks specific jurisdiction over Red Rock.

Absent general personal jurisdiction, the Court considers whether it has specific personal jurisdiction over Red Rock by examining its contacts with Nevada, whether the controversy arose out of those contacts, and whether the exercise of jurisdiction is reasonable. *See LNS Enter. LLC*, 22 F.4th at 859. The Ninth Circuit provides a three-prong test for analyzing an assertion of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of

6

> jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* "The plaintiff bears the burden on the first two prongs. If the plaintiff establishes the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* (internal quotation marks and citation omitted).

On the first prong, because this action sounds in negligence the question is whether Red Rock purposefully availed itself of the privilege of conducting activities in Nevada. *Id.* at 859-861. *See Holland America Line Inc. v. Wärtsilä North America, Inc.*, 485 F.3d 450, 460 (9th Cir.2007) (acknowledging that the purposeful availment analysis applies to negligence claims[.]"). At one end of the purposeful availment spectrum, a defendant purposefully avails itself to the privilege of conducting activities in a forum if it engages in pervasive advising in a forum state, sells products in a forum state, and provides services in a forum state. *Ford Motor Co. v. Montana Eighth Judicial District,* ⎯⎯ U.S. ⎯⎯, 141 S. Ct. 1017 (2021). If such pervasive contacts exist, a plaintiff need not even demonstrate a causal connection between a forum state and a defendant. *Id. Ford Motor Co.* presented a case that involved "a veritable truckload of contacts" between Ford Motor Company and the forum states such that Ford conceded purposeful availment. *Id.* at 1031. Ford advertised in the forum states through billboards, TV and radio spots, print ads, and direct mail, urging residents of both states to buy the cars at issue in the lawsuit. *Id.* at 1028. The cars at issue were available for sale in both states, dealers maintained and repaired them, and Ford distributed replacement parts in the states. *Id.* The Court thus found jurisdiction even though the cars at issue were not sold in the forum state. *Id.* at 1029. Ford thus stands for the proposition that "some relationships will support jurisdiction without a causal showing." *Id.* at 1026. Those relationships entail

doing so much business in a forum state that the non-forum defendant creates a reciprocal obligation with the forum state. *Id.* at 1030.

At the other end of the spectrum are non-forum defendants who lack pervasive contacts with the forum state. For those defendants, maintaining a universally accessible website, even one that advertises third-party businesses in the forum state, fails to establish purposeful availment. *LNS Enter. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 863 (9th Cir. 2022). Purposeful availment may exist if the non-forum defendant maintains a physical presence in the forum state and there is some causal relationship to the litigation. *Id.* at 864. In *LNS*, the Ninth Circuit found that two nonresident defendants— Continental, an engine manufacturer, and Textron, an aircraft manufacturer— had insufficient minimum contacts with Arizona to subject either of them to a lawsuit in Arizona involving the crash of one of the airplanes they were involved in manufacturing. *Id.* at 856-57. Continental's contacts were insufficient for the purposeful availment prong and Textron's contacts were insufficient because there was no causal connection linking its forum contacts to the litigation. Continental was not authorized to do business in Arizona, had no offices in Arizona, owned no property in Arizona, had a merely third-party relationship with four service centers advertised on its website, and did not advertise, sell, or service the type of engine at issue in Arizona. *Id.* at 856-59.

Neumann's case for personal jurisdiction over Red Rock is weaker than the plaintiffs' case in *LNS*. Like Continental, Red Rock is not authorized to do business in Nevada, has no offices in Nevada, and owns no property in Nevada. *Id.* at 856-59. Like Continental's website, Red Rock's website is universally accessible. *Id.* Continental's website, however, advertised third party businesses in the forum state, while Red Rock's does not. *Id.* The fact that Red Rock's website has some interactive features does not tip the analysis toward finding personal availment as the website does not target Nevada or Nevadans: "If the defendant

8

merely operates a website, even a highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011). Neumann thus cannot satisfy the first prong of the personal jurisdiction analysis.

Even if Neumann could satisfy the purposeful availment prong, she could not satisfy the second prong, which requires a causal connection between forum-contacts and the claims at issue. The *LNS* court assumed that because Textron maintained a service center in Arizona, it purposefully availed itself to the privilege of conducting activities in Arizona. *LNS Enterprises LLC*, 22 F.4th at 846. It found, however, because this contact fell far short of the relationship between Ford and the forum states in *Ford*, a causal nexus between Textron and the claims at issue was required. *Id.* (*citing Ford,* 141 S. Ct. at 1025-28.) The *LNS* court found this causal nexus lacking because Textron did not manufacture, design, or service the plaintiffs' aircraft in Arizona. *Id.* Unlike Textron, Red Rock does not have a physical presence in or any analogous contact with Nevada. But even if maintaining a publicly accessible website and mailing print materials to Nevadans who have become involved with Red Rock constitutes purposeful availment, the Court still would find no personal jurisdiction because this case does not arise out of these contacts. Weight was not lured to the Easter Jeep Safari by Red Rock's website or any of Red Rock's online or print marketing materials. He elected to attend the event because his customer told him about it. Moreover, Neumann's decision to join Weight at the Easter Jeep Safari bears no relation at all to any of Red Rock's Nevada contacts. The Court cannot find personal jurisdiction over Red Rock.

### 2. Venue

Having determined that this Court lacks personal jurisdiction over Red Rock, the Court next considers Red Rock's motion to dismiss for improper venue

or, in the alternative, its request to transfer. (ECF 40 at 2.) Red Rock argues that venue is improper under 28 U.S.C. § 1391(b) and requests a transfer of venue. *Id.* Because venue is proper, but personal jurisdiction over Red Rock is lacking, the Court finds that transfer is to the District of Utah is appropriate.

Venue of a removed action like this one is governed by 28 U.S.C. § 1441(a). *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665–66 (1953) (holding § 1441(a) governs venue in removal actions, not the general venue statute 28 U.S.C. § 1391); *cf.* 28 U.S.C. § 1441(a) (removal jurisdiction) *with* 28 U.S.C. § 1391 ("Venue Generally"). Section 1441(a) expressly provides that the proper venue of a removed action is "the district court of the United States for the district and division embracing the place where such action is pending." Because Neumann initiated this action in state court in Clark County, venue is proper because the District of Nevada is the district embracing Clark County, where this action was originally filed. *See* 28 U.S.C. § 1441(a).

Transfer of venue is appropriate where, as here, venue is proper, but personal jurisdiction is lacking. *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 n.4 (9th Cir. 1983) (acknowledging that a claim may be transferred under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) where venue in the transferor court is proper, but personal jurisdiction over the defendant cannot be obtained there) (*citing Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (allowing transfer to cure lack of personal jurisdiction where venue was improper)); *Reed v. Brown*, 623 F. Supp. 342, 346 (D. Nev. 1985)(transferring diversity action under 28 U.S.C. § 1404(a) after finding lack of personal jurisdiction); *Froelich v. Petrelli*, 472 F.Supp. 756, 758–60 (D. Haw. 1979) (concluding that both § 1404(a) and § 1406(a) permit transfer of venue in the absence of personal jurisdiction).

Transfer of this action to the District of Utah is appropriate under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). A case may be transferred to any other district where it might have been brought if the transfer serves the convenience

of the parties and witnesses and the interests of justice. *See* 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406(a) (authorizing transfer if venue is improper in the transferring court and transfer is in the interest of justice). There is no question that this case could have been brought in the District of Utah: subject matter jurisdiction exists there because the plaintiff and defendant are diverse; venue is proper because the underlying incident occurred in Utah; and Red Rock is subject to personal jurisdiction and amenable to service of process in the District of Utah. There is also no doubt that all parties and witnesses would benefit from transfer. Red Rock and many of its witnesses are in Utah. Though Neumann and her witnesses are largely located in Nevada, she will benefit from transfer in lieu of dismissal which spares her the inconvenience and expense of refiling in the District of Utah.

### C. Conclusion

Because the Court lacks personal jurisdiction over Red Rock, transfer of this action to the District of Utah, in lieu of dismissal, is in the interests of justice. The Court therefore transfers this action to the District of Utah.

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (ECF No. 38) is GRANTED in part and DENIED in part. The Court declines to dismiss this action and instead transfers it to the United States District Court, District of Utah.

DATED THIS 15th Day of August 2022.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11