THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| LAURA NEUMANN,<br><br>Plaintiff,<br><br>vs.<br><br>RED ROCK 4-WHEELERS, INC., a Utah Corporation; DOES 1 through 100; and ROES 1 THROUGH 100, inclusive,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:22CV00516 DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the court on Defendant Red Rock 4-Wheelers, Inc.'s ("Red Rock" or "Defendant") Motion for Summary Judgment and on its Motion to Exclude Plaintiff's Expert Bill Uhl. The court held a hearing on May 8, 2025. At the hearing, Red Rock was represented by Karmen Schmid, and Plaintiff Laura Neumann ("Ms. Neumann") was represented by David J. Feldman. At the conclusion of the hearing, the court took the matter under advisement. Now being fully informed, the court issues the following Memorandum Decision and Order granting Defendant's Motion for Summary Judgment and denying as moot its Motion to Exclude Plaintiff's Expert Bill Uhl.

## UNDISPUTED FACTS

This case is about a tragic accident that severely injured Ms. Neumann during a 2019 Easter Jeep Safari (the "Safari") in Moab, Utah, and whether Red Rock, the event organizers, may be held liable for her injuries. Red Rock is a social club whose members are off-road driving

1

enthusiasts. Its mission includes working to keep public lands accessible to jeeping, and its members help to clean up and mark trails in the Moab area. Red Rock's officers and directors are unpaid volunteers. Red Rock has organized the annual Safari event since 1983. The week-long Safari draws thousands of participants from across the country every year and consists of dozens of trail rides on BLM land, departing from Moab, Utah. Participants drive their own four-wheel drive vehicles on the trails.

The trails have varying degrees of difficulty: some trails are essentially flat, while others require the driver to navigate difficult, naturally occurring, obstacles. The difficulty rating for each trail is published online and in Red Rock's print publication. Red Rock does not conduct or require any driving or skills test for the Safari driver-participants. It is left to the driver-participants to decide for themselves, based on the information Red Rock provides them about each trail, whether they have the requisite skill to navigate the trail.

Red Rock organizes the rides by signing up participants and providing volunteer trail guides for the rides. The trail guides drive their own vehicles and are unpaid volunteers. Four or five trail guides are assigned per trail ride, with a guide leading at the front of the group, two guides in the middle of the group, and a guide placed at the rear. The role of the trail leader is to show the participants where the trail goes. Guides sometimes give guidance to drivers on how to navigate an obstacle, but only when asked to do so.

At these Safaris, while drivers are navigating an obstacle, other participants often exit their vehicles to watch. They take pictures and videos and offer advice or assistance to the driver as needed. These trails are on public land and drivers can always use these trails, on their own, whenever they want to, but one reason they come for the Safari is because participants

2

enjoy communing with each other on the trail, cheering each other on, helping and learning from each other.

On the morning of April 14, 2019, Ms. Neumann and her boyfriend (now husband) Rick Weight traveled from Nevada to Moab to participate in the Safari. Mr. Weight and Ms. Neumann registered to drive the Golden Spike Trail on April 14, 2019. They embarked on the 14-mile Golden Spike Trail as part of a group of approximately 30 other vehicles. Participants negotiate the trail in the way that they choose, and they navigate their off-road vehicles up and down steep rock faces and over boulders. Mr. Weight drove his Jeep Rubicon, and Ms. Neumann rode as a passenger. The Golden Spike Trail is rated a difficulty of 7 out of 10. A difficulty rating of 7 is described as follows:

> Trail consists of rock, sand and considerable slickrock with many steps exceeding 48". Steep inclines and declines are prevalent. Enhanced off road equipment is required including locking devices (front & rear), 35" tires, maximum vehicle ground clearance, and tow hooks. A winch is desirable. Excellent driving skills are required. Vehicle mechanical or body damage is likely. Roll over possibilities exist.

As the Jeeps are taking off on the tour, a Release of Liability and Waiver of Claims form (the "Waiver Form") is given to each driver participant to review, sign, and return to the trail volunteer. There is evidence that a Red Rock leader would explain the trail difficulty, the equipment needed, and "he would say you all got your releases . . . make sure you understand them before you sign[] them."[1] But the court recognizes that this fact is disputed, as Ms. Neumann asserts that no one told her to read the Waiver Form or explained that there were two sides to the Waiver Form.

---

[1] *See* Depo. of Jon Campbell, ECF No. 86-1 at 64:7-25, 65:1-21.

Before embarking on the trail ride, Ms. Neumann signed and dated the Waiver Form. The Waiver Form is two-sided, but Ms. Neumann contends that she saw only the second page and did not know that there was a first page on the other side of the paper. The court has assumed that the Red Rock volunteers did not ensure that the person signing the Waiver Form actually read it or saw both sides of the form. The front side, which Ms. Neumann purportedly did not see, contains the following information:

> EXPRESS ASSUMPTION OF RISK, DECLARATION OF FITNESS,
> RELEASE OF LIABILITY, WAIVER OF CLAIMS, AND INDEMNITY AGREEMENT
> RED ROCK 4-WHEELERS, INC.
>
> *Please read and be certain you understand the implications of signing this important document.*
> EXPRESS ASSUMPTION OF RISK ASSOCIATED WITH RED ROCK 4-WHEELER ("RR4W") EVENTS:

The Waiver Form then outlines multiple inherent hazards and risks in the event, including:

i.  Risk of injury from the Activities and equipment utilized in the Activities can be significant and includes the potential for cuts, broken bones, permanent disability, and death.

ii. Possible equipment failure and/or malfunction of my own or others' equipment.

iii. Collision and running into objects, persons or animals including but not limited to fallen people or objects, boulders, crevices, logs and stumps, sand-traps and other hazards that are not visible.

iv. My own negligence and/or the negligence of others, including RR4W directors, officers, members, employees, trail officials, volunteers, and agents, including but not limited to operator error.

v.  Falling off cliffs, large rocks or boulders; sliding on or becoming stuck in sand; flipping my motor vehicle or other hazards that may result in wetness, injury, exposure to elements, hypothermia, impact of body upon water, rocks, roadways, or sand.

vi. Cold weather and heat related injuries and illness including but not limited to frostnip, frost bite, head exhaustion, heat stroke, sunburn, hypothermia, dehydration.

- vii. Exposure to outdoor elements, including but not limited to rock fall, inclement weather, thunder and lightning, severe and/or varied wind, temperature or weather conditions.

- viii. Attack by or encounter with insects, reptiles, and/or animals.

- ix. Accidents or illness occurring in remote places where there are no available medical facilities.

- x. Fatigue, chill, and/or dizziness which may diminish my/our reaction time and increase the rick of accident.

I understand this description of hazards/risks is not complete and that unknown or unanticipated hazards/risks may result in injury, disability, or death.

The back side of the Waiver Form, which Ms. Neumann signed, states the following:

**RELEASE OF LIABILITY, WAIVER OF CLAIMS, AND INDEMNITY AGREEEMENT:**

In consideration for being permitted to participate in 4-wheeling, motorized touring, 4-wheel drive events, outdoor recreational activities, traveling to and from the 4-wheel trails and related activities.

1. <u>Release of Liability.</u> I HEREBY RELEASE WITH RESPECT TO ANY AND ALL INJURY, ILLNESS, DISABILITY, DEATH, or loss or damage to person or property arising out of my participation in or otherwise related to the Activities, WHETHER CAUSED BY NEGLIGENCE (Active or Passive) OR OTHERWISE, Red Rock 4-Wheelers, Inc., and its officers, directors, employees, agents, trail officials and volunteers and its sponsors, including the Chamber of Commerce, Grand County, and the Old Spanish Trail Arena (collectively referred to herein as "Releasees").

2. <u>Waiver of Claims.</u> I knowingly, voluntarily, express waive any claim I may have against Releasees for any injuries or damages that I may sustain as a result of participation of the Activities. I, my estate, heirs, survivors, executors, or assigns forever release, waive, discharge and covenant not to sue Releasees for any injury or death caused by negligence or other acts.

3. <u>Indemnification.</u> I agree to indemnify, hold harmless, and defend Releasees from any and all claims, damages, actions, judgments, liabilities, demands, agreements, costs and controversies of any kind, in law, equity or otherwise, whether known or unknown, arising out of my participation in the Activities, whether causes by the negligence (active or passive) of the Releasees or otherwise.

5

Eight hours into the trail ride, Ms. Neumann and Mr. Weight were outside their vehicle, watching another driver, Jeremy Felts, attempt to drive over a large boulder. Ms. Neumann was standing with other participants approximately 50-60 feet away from Mr. Felts' Jeep. As he was attempting to drive over the large boulder, Mr. Felts lost control of his vehicle and ran over Ms. Neumann. Ms. Neumann suffered severe, life-changing injuries, which required multiple surgeries and left her permanently disabled. In a written statement to the police, Mr. Weight described the incident as follows:

> Sunday, 4-14-19, approximately 4:30. Moab Jeep Safari. Golden Spike Trail. Laura Neumann and I, along with other spectators, were watching a white four-door Jeep climb on an obstacle, standing approximately 50 feet away. We felt safe as the driver was moving from our right to left. Spotter had driver on the right line. And as the Jeep climbed it, he began to lose traction. The driver panic revved the engine. Jeep started to tip onto the driver's side, caught traction, launched off the obstacle. Made a complete 180-degree turn directly towards the crowd. Driver cranked the wheels completely to the left, did not let off the throttle, never touched the brake. Everyone got out of the way except Laura. Laura was hit, pulled under the Jeep, chewed up like a rag doll, and spit out the back as the Jeep launched off [the] embankment crashing into a rock wall.

The incident was captured on video by another participant. On the video, one can see that Jeremy Felts, who was driving a white Jeep Rubicon, began to navigate the obstacle. A Red Rock trail guide (wearing a long sleeve green shirt) is seen giving guidance to Mr. Felts before he loses control of his vehicle.

In her Opposition Memorandum, Ms. Neumann sets forth many other purported "undisputed facts," but many of the facts are immaterial or constitute legal conclusions. In several instances, the court often did not find support for the alleged fact in the citations that were provided. For example, in Statement of Fact No. 35, Ms. Neumann states that "Trial [sic] officials are required to ensure the safety of bystanders . . ." Not only is such a statement a legal

conclusion—and not a fact—but the court could not find anything in the cited material that would suggest that Red Rock intended to undertake such a duty. Rather, there is testimony from Jon Mark Campbell, a trail guide, when asked during his deposition if there was anything that "is your practice to do to protect observers," that "[i]f we [as trail guides] see – if we see an issue on a particular obstacle, then, yes, we will ask an observer to move. It's up to that observer, you know, they're free to do what they want to do. We're not there to tell them that they have to, you know, move, or get back. But, yes, I mean, just as being a human being who cares . . . we would ask somebody to, you know, move."[2]

But even if the court accepted Ms. Neumann's statements of fact (and not legal conclusions), the court's rulings below would not change because whether there were any breaches of duties is not relevant given the court's conclusions below.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] The moving party has the initial burden of showing an absence of evidence to support the non-moving party's case.[4] The non-moving party must then "identify specific facts that show the existence of a genuine issue of material fact", and "must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."[5]

---

[2] ECF No. 85-1 Ex. 3 at 38.

[3] Fed. R. Civ. P. 56(a).

[4] *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022).

[5] *Id.* (quoting *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995)).

"For there to be a 'genuine' dispute of fact, 'there must be more than a mere scintilla of evidence,' and summary judgment is properly granted "if the evidence is merely colorable or is not significantly probative."[6]

## DISCUSSION

In her Complaint, Ms. Neumann alleges that Red Rock was negligent by failing to maintain a safe distance for the participants observing the other drivers. Ms. Neumann also alleges that the Red Rock trail guides improperly advised Jeremy Felts while he was attempting an obstacle, resulting in Mr. Felts losing control of his vehicle and striking Ms. Neumann. She has also asserted a claim for gross negligence.

Red Rock has moved for summary judgment, arguing that Ms. Neumann's negligence claims are barred (1) by the doctrine of assumption of risk; and (2) because she signed a release of liability and waiver of claims. Red Rock argues that the risk of another driver making a mistake and causing injury to other participants, is an inherent risk of this activity. They contend that Ms. Neumann assumed this risk by participating in this event and by exiting her vehicle to watch the other driver attempting to maneuver a difficult obstacle. Red Rock also argues that Ms. Neumann has insufficient evidence to support a finding that Red Rock was grossly negligent, and therefore, her claim for gross negligence also fails as a matter of law.

In opposition, Ms. Neumann argues that questions of fact exist regarding Red Rock's duty of care and whether Red Rock breached that duty.[7] She also asserts that factual questions

---

[6] *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (quoting *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993)).

[7] In her Memorandum in Opposition, Ms. Neumann argues that the Federal Government and Utah's Legislature have imposed a statutory duty of care on Red Rock, citing Utah Code Utah

8

exist as to the waiver she signed, including whether she was advised of the risks she would be exposed to as a spectator. She further asserts that she saw and signed only the second page of the two-sided waiver because the Red Rock volunteer did not tell her that there was another side to the document, and there was no indication on the document itself that there was another page since there were no page numbers. Finally, she argues that she was not directed to read the page she signed, and since she was only a "spectator" and not a driver, she did not believe she needed to read it.

The court concludes that Ms. Neumann's negligence claims are barred by the doctrine of assumption of risk and because she signed a release of liability and waiver of claims, which is an enforceable contract. Ms. Neumann's claim for gross negligence also fails because there is insufficient evidence to establish such a claim.

I. ASSUMPTION OF RISK[8]

In *Nixon v. Clay*, the Utah Supreme Court recognized the doctrine of primary assumption of risk, which establishes that a defendant has no duty to avoid dangers that are 'inherent' in a given activity."[9] The "inherency" of the danger is "rooted in a principle of implied consent—that participants implicitly consent to dangers that are inherent in the activity they voluntarily participate in."[10] The *Nixon* court stated that "[f]or [inherent] dangers, the doctrine of primary

---

Code § 57-14-205 and U.C.A. § 41-22-13. The court is not persuaded that these statutes are relevant to this case.

[8] The parties appear to agree that Utah law applies, as a federal court sitting in diversity looks to the conflict of law rules of the forum state to determine the controlling substantive law.

[9] 2019 UT 32, ¶ 15 (citing *Rutherford v. Talisker*, 2019 UT 27, ¶¶ 45–46 (describing the doctrine of primary assumption of risk and explaining that it forecloses a duty in tort for conduct inherent in a voluntary activity)).

[10] *Id.* at ¶ 26.

assumption of risk provides that there is no duty, and thus no liability, in tort. The inherency inquiry will depend on the facts of a particular case and the characteristics of a particular [activity]."[11]

An activity falls within the primary assumption of risk doctrine if it "is done for enjoyment or thrill, requires physical exertion as well as elements of skill, and involves a challenge containing a potential risk of injury."[12] "The overriding consideration in the application of primary assumption of risk is to avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature."[13]

The court finds that off-road jeeping involves an inherent risk of injury. As other courts have found, "[i]ndeed, [i]t cannot be seriously disputed that off-roading is an inherently dangerous activity."[14] It involves an elevated degree of danger, and the skill and experience of

---

[11] *Id.* at ¶¶ 26-27.

[12] *Huff v. Wilkins*, 138 Cal. App. 4th 732, 739 (2006), as modified (Apr. 26, 2006) (quotations omitted).

[13] *Peart v. Ferro*, 119 Cal. App. 4th 60, 71 (Cal. App. 2004); *see also Distefano v. Forester*, 85 Cal. App. 4th 1249, (holding that the doctrine of primary assumption of risk precludes claim for injuries which are inherent in the risks of off-roading driving activities, and finding that "the very nature of the sport of off-roading is driving activity that would not be countenanced on streets and highways, such as unsafe speeds, stirring up dust, becoming airborne on hills and cresting dunes…[and] that there is an inherent risk of injury, serious injury or even death, in the conduct of the sport."); *Tallarigo v. Dryden*, 2013 WL 6629036, *4 (Ohio App. 2013) (claim for injury for dirt bike riding barred because off-roading involves inherent risks of inadvertent motor vehicle collisions); *Schiavone v. Brinewood Rod & Gun Club, Inc.*, 283 A.D.2d 234 (N.Y. 2001) (claims brought by club member injured while dirt-biking on land owned by non-profit recreational club barred by assumption of risk).

[14] *Staniforth v. United States*, No. 23CV449-JM-MMP, 2024 WL 2702445, at *5 (S.D. Cal. May 24, 2024), *amended on denial of reconsideration,* Case No. 23CV449-JM-MMP, 2024 WL 3463650 (S.D. Cal. July 18, 2024) (internal quotation omitted); *see also Mattle v. United States*, Case No. CV 12-10157-JFW (FFMx), 2013 WL 11328421, at *9, (C.D. Cal. Nov. 26, 2013) (Plaintiff assumed the risk of injury when he elected to engage in off-road riding on his ATV on the undeveloped Rowher Truck Trail); *Distefano v. Forester*, 85 Cal. App. 4th 1249, 1264, 102 Cal.Rptr.2d 813

10

the driver play a significant role in the enjoyment of the sport. The thrill of attempting (and conquering) a difficult obstacle is a significant factor in drawing enthusiasts to the Safari every year. Being struck by another driver is a risk that is inherent in attending the Safari. Each trail ride has approximately 30 participating drivers, and the risk of another driver making a mistake and causing injury to other participants is an inherent risk of this activity. Certainly, participants are free to choose easier trails that are less dangerous, and they can also choose to stay in their vehicles, or if they exit, stand far away from other vehicles. The choice is entirely theirs.

Ms. Neumann assumed this risk by participating in this event and by choosing to exit her vehicle to watch the other driver attempt to maneuver a difficult obstacle. There is no evidence that anyone associated with Red Rock directed Ms. Neumann to exit her vehicle or to stand in the location where she was standing. Ms. Neumann's claim for ordinary negligence is therefore barred.

Moreover, the court is not persuaded by Ms. Neumann's argument that she was a mere spectator or participant—and not a driver. The Utah Supreme Court has applied the assumption of risk doctrine to spectators of sports.[15] Here, Ms. Neumann chose to spend over ten hours in a Jeep, driving on off-road trails through the Utah desert with several dozen other participants. She chose to exit her vehicle, walk to the place where she was standing, and watch Mr. Felts attempt to conquer an obstacle. She believed she was standing at a safe distance, as

---

(2001) ("[T]he sport of off-roading involves inherent risks that the participants in this recreational activity may be involved in inadvertent motor vehicle collisions and may suffer serious injury or death.").

[15] *See Lawson By & Through Lawson v. Salt Lake Trappers, Inc.* 901 P.2d 1013, 1016 (1995) ("[B]eing struck by a foul ball is one of the natural risks assumed by spectators attending professional games.") (internal quotations omitted).

did many other participants standing with her. Undoubtedly, she never imagined she was going to be hit by Mr. Felts. But while the precise circumstances of the injury may have been unpredictable, the potential for being injured by another driver is an inherent risk of this activity. As a passenger, she assumed the same risks that the drivers did. Because she assumed the risk of this inherently dangerous activity, her claim for negligence against Red Rock must fail.

## II. RELEASE OF CLAIMS AND WAIVER OF LIABILITY

"It is a general principle of common law that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duty."[16] Preinjury releases are not unlimited in power and can be invalidated when: (1) the release offends public policy; (2) the release is for activities that fit within the public interest exception; and (3) the release is unclear or ambiguous.[17] Here, the release was clear and unequivocal. It was not against public policy, and because it was signed for participation in a voluntary activity, it does not fall under the public interest exception.

The Release of Claims and Waiver of Liability (the "Waiver Form") states:

> In consideration for being permitted to participate in 4-wheeling, motorized touring, 4-wheel drive events, outdoor recreational activities, traveling to and from the 4-wheel trails, and related activities:
>
> 1.    Release of Liability. I HEREBY RELEASE WITH RESPECT TO ANY AND ALL INJURY, ILLNESS, DISABILITY, DEATH, or loss or damage to person or property arising out of my participation in or otherwise related to the Activities, WHETHER CAUSED BY NEGLIGENCE (Active or Passive) OR OTHERWISE, Red Rock 4-Wheelers, Inc., and its officers, directors, employees, agents, trail officials and volunteers and its

---

[16] "*Pearce v. Utah Athletic Found.*, 179 P.3d 760, 765 (Utah 2008) *abrogated on other grounds by Penunuri v. Sundance Partners Ltd.*, 423 P.3d 1150 (Utah 2017).

[17] *Id.* at 765.

      sponsors, including the Chamber of Commerce, Grand County, and the Old Spanish Trail Arena (collectively referred to herein as "Releasees").

2. <u>Waiver of Claims.</u> I knowingly, voluntarily, express waive any claim I may have against Releasees for any injuries or damages that I may sustain as a result of participation of the Activities. I, my estate, heirs, survivors, executors, or assigns forever release, waive, discharge and covenant not to sue Releasees for any injury or death caused by negligence or other acts.

3. <u>Indemnification.</u> I agree to indemnify, hold harmless, and defend Releasees from any and all claims, damages, actions, judgments, liabilities, demands, agreements, costs and controversies of any kind, in law, equity or otherwise, whether known or unknown, arising out of my participation in the Activities, whether causes by the negligence (active or passive) of the Releasees or otherwise.

      The Waiver Form clearly and unmistakably releases alleged negligent acts committed by Red Rock during 4-wheel drive events. The Waiver is also clear that the release of liability pertained to participation in 4-wheel driving activities, including 4-wheel drive events. There is no additional language in the Waiver regarding exceptions to Red Rock and 4-wheel drive events, there is not a possibility that reasonable minds would differ on who and what Ms. Neumann released when she signed the Waiver Form. This language is clear and unequivocal and meets the standard for a valid preinjury release.[18]

      In addition, there is no public policy, either in statute or in case law, that prohibits an adult from releasing claims of liability for injuries sustained while attending a jeep club event. For "a contract to be void on the basis of public policy, there must be a showing free from

---

[18] The court recognizes that the United States District Court for the District of Utah has sometimes found releases unenforceable under a "clear and unmistakable" standard, but the language used in the Waiver Form in this case is distinguishable from the language found unenforceable in other cases. *See*, *e.g.*, *Finken v. USA Cycling, Inc.*, No. 1:17-cv-79, 2020 WL 2926661, at *2 (D. Utah June 3, 2020); <u>Zollman v. Myers</u>, 797 F. Supp. 923, 924 (D. Utah 1992). <u>Ghionis v. Deer Valley Resort Co.</u>, 839 F. Supp. 789, 791 (D. Utah 1993). Here, the language of the Waiver Form is clear and unmistakable because it is not susceptible to more than one reasonable meaning.

doubt that the contract is against public policy."[19] In *Penunuri*, the Utah Supreme Court held that the waiver signed for recreational horseback riding was not void against public policy. Utah courts are reluctant to invalidate a release on policy grounds unless there is a clearly stated policy in statute, or a clear policy has been articulated in prior case law.[20] There is no public policy against an adult releasing liability for injuries sustained in a voluntary Jeep club activity, such as the Safari.

The Waiver Form also does not violate the public interest exception. The public interest exception is based on the policy against contractually limiting liability "for activities in which there is a strong public interest."[21] Although different courts look at various factors to determine whether an activity falls within the public interest, the Utah Supreme Court adopted six factors, based on the California case of *Tunkl v. Regents of the Univ. of California*[22] to weigh against application of the public interest exception. The six factors include:

(1)   The transaction concerns a business of a type generally thought suitable for public regulation.

(2)   the party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

(3)   The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

(4)   As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of

---

[19] *Penunuri v. Sundance Partners, Ltd.*, 257 P.3d 1049, 1053 (Utah Ct. App. June 9, 2011) (citations omitted).

[20] *Rothstein v. Snowbird Corp.*, 2007 UT 96, ¶ 10, 175 P.3d 560.

[21] *Berry v. Greater Park City Co.*, 2007 UT 87, ¶12.

[22] 383 P.2d 441, 445-46 (Cal. 1963).

<blockquote>

(5) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

(6) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.[23]

</blockquote>

No one factor is dispositive, and the existence of any of the factors alone is not enough to bring an activity within the public interest or keep it out of the public interest. Here, several of the factors point away from the Safari event being included under the public interest exception. For example, Jeep clubs are not performing a service of great importance to the public, which is often a matter of practical necessity. Moreover, Jeep clubs are a non-essential activity so the fourth and fifth factors do not apply because Red Rock's advantage in bargaining power was of little consequence since Ms. Neumann did not have to attend the Safari or ride in a Jeep.[24]

In *Berry*, the fact that the activity for which the release was signed was non-essential weighed heavily in the decision to uphold the release, even though the releasee had considerably greater bargaining power and presented its customer with a standard adhesion contract. The *Tunkl* factors demonstrate that jeeping is a type of non-essential activity that should not be found to be in the public interest.

Moreover, it is well established in Utah that

<blockquote>

[O]ne party to an agreement does not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied in a written contract. Rather, each party has the burden to read and understand the terms of

</blockquote>

---

[23] *Berry*, 2007 UT 87, ¶ 15.

[24] *See Berry*, 2007 UT 87, ¶¶ 21-22.

a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense. This rule is based upon the panoply of contract law upholding the principle that a party is bound by the contract which he or she voluntarily and knowingly signs.[25]

The fact that the Red Rock volunteers may not have instructed Ms. Neumann to read the Waiver Form or pointed out that there was a front and a back side to the Waiver Form does not render the Waiver Form unenforceable. Therefore, the court finds that the Waiver Form is valid and enforceable, and it bars Ms. Neumann's negligence claims.

### III. GROSS NEGLIGENCE

Gross negligence is "the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result."[26] "Gross negligence requires proof of conduct substantially more distant from the appropriate standard of care than ordinary negligence."[27] The Utah Supreme Court has affirmed summary judgment on a gross negligence claim where "it cannot be reasonably asserted that [the defendant] showed utter indifference to the possibility that [its acts could cause the claimed damages]."[28] The Utah Supreme Court has emphasized that "gross negligence and intentional torts implicate far more than mere inattention; they involve severe levels of culpability."[29] "So,

---

[25] *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987).

[26] *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 26; *see also Ipsen v. Diamond Tree Experts, Inc.*, 2020 UT 30, ¶ 14.

[27] *Berry*, 2007 UT 87.

[28] *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 14, 284 P.3d 616.

[29] *Ipsen*, 2020 UT 30, ¶ 14 (quoting *Atkin Wright & Miles v. Mountain States Telephone & Telegraph Co.*, 709 P.2d 330, 335 (Utah 1985) (emphasis added) (internal quotation marks omitted).

although gross negligence differs only in degree from ordinary negligence, . . . that difference in degree is large and matters."[30]

Discovery in this case has not uncovered evidence that a reasonable jury could reach a conclusion that gross negligence had occurred here. Ms. Neumann has not provided evidence upon which a reasonable jury could find that Red Rock, in organizing and conducting this Safari, demonstrated the "severe culpability" that Utah law requires for a determination of gross negligence. Red Rock did not direct her to stand in that location, it had no control over the actions of Mr. Felts, who tragically ran over Ms. Neumann. There is no evidence to demonstrate that Red Rock showed an utter indifference to her safety. This terrible accident was completely unexpected to the Red Rock volunteers and to the more than dozen participants standing in that particular location. Without more, however, the occurrence of a horrendous accident cannot support a claim for gross negligence on the part of the Safari organizers. Therefore, Ms. Neumann's claim for gross negligence must be dismissed.

## CONCLUSION

Accordingly, Red Rock's Motion for Summary Judgment [ECF No. 80] is GRANTED, and Red Rock's Motion to Exclude Plaintiff's Expert Bill Uhl [ECF No. 79] is DENIED AS MOOT. Judgment will be entered accordingly.

DATED this 29th day of September 2025.

BY THE COURT:

_DALE A. KIMBALL_
DALE A. KIMBALL
United States District Judge

---

[30] *Id.* (internal citation omitted).